Belknap
No. 2011-909

THE STATE OF NEW HAMPSHIRE

v.

MICHAEL CARPENTER NOUCAS

Argued: April 17, 2013
Opinion Issued: July 16, 2013

*Michael A. Delaney*, attorney general (*Elizabeth C. Woodcock*, assistant attorney general, on the brief and orally), for the State.

*Stephanie Hausman,* senior assistant appellate defender, of Concord, on the brief and orally, for the defendant.

LYNN, J. Following a jury trial in Superior Court (*O'Neill,* J.), the defendant, Michael Carpenter Noucas, appeals his conviction for being an accomplice to armed robbery. *See* RSA 636:1 (2007) (robbery); RSA 626:8 (2007) (accomplice liability). On appeal, he argues that the trial court erred when it: (1) found that sufficient evidence supported his conviction; (2) failed to instruct the jury on defense of another under RSA 627:4 (Supp. 2012); and (3) sustained a hearsay objection made by the State. He also argues that the trial court committed plain error when it admitted testimony that the defendant invoked his right to counsel following his arrest. We affirm.

The jury could have found the following facts. On June 5, 2010, the defendant told Julie Sallies and Robert Hart that he wanted to rob "some guy" who was staying at Sarah Longval's house at 16 Lake Street in Meredith. Longval was the mother of the defendant's son, and the defendant had a key to her house. After a brief discussion, in which the defendant said that the intended victim had cocaine and cash, Sallies, Hart, and the defendant prepared to commit the robbery. Hart dressed in dark clothing, Sallies obtained two orange ski masks, and Hart or Sallies grabbed a baseball bat. After Sallies drove the defendant and Hart to Meredith, the defendant instructed her to park in a small gravel area behind Longval's house. The defendant and Hart then got out of the car, put on the two orange ski masks, and went into the tree line behind the house. The defendant soon returned to the car and collected a knife. Sallies stayed in the car.

Approximately fifteen minutes later, the defendant staggered back to the car. He was bleeding "everywhere." His left ear was nearly severed, and he had a stab wound in his throat, a small wound on the top of his head, and smaller cuts on his arms and hands. When Hart failed to appear after a few moments, Sallies drove to the Meredith police station to get help. The police subsequently found Hart dead in a spare bedroom on the third floor of Longval's house. He had sustained approximately a dozen stab wounds to his chest, back, and head. He was found wearing rubber gloves and a bat was lying on the floor nearby. The intended victim of the robbery, David Rivera, had cuts on one of his hands or arms. An orange ski mask and a rubber glove recovered from inside the spare bedroom on the third floor of the house tested positive for the defendant's DNA.

The defendant was subsequently charged with being an accomplice to armed robbery.[1] The indictment charged that the defendant aided Hart in the commission of armed robbery with the purpose that the offense be committed. It further charged that the defendant, knowing that Hart was about to commit armed robbery, agreed to assist Hart and accompanied him to Longval's residence while armed with a knife and wearing a mask and rubber gloves. After a jury convicted the defendant, he appealed.

## I. Sufficiency of the Evidence

The defendant first argues that the trial court erred in finding that there was sufficient evidence to support his conviction.

RSA 626:8 provides, in relevant part, that an individual is "legally accountable for the conduct of another person when . . . [h]e is an accomplice of such other person in the commission of the offense." RSA 626:8, II(c); State v. Formella, 158 N.H. 114, 116 (2008). A person is an accomplice if "[w]ith the purpose of promoting or facilitating the commission of the offense, he solicits such other person in committing it, or aids or agrees or attempts to aid such other person in planning or committing it." RSA 626:8, III(a); see Formella, 158 N.H. at 116. A person commits robbery if, in the course of committing a theft, he "[u]ses physical force on the person of another and such person is aware of such force," or "[t]hreatens another with or purposely puts him in fear of immediate use of physical force." RSA 636:1. A person commits armed robbery if, while committing robbery, he was: (1) actually armed with a deadly weapon; (2) reasonably appeared to the victim to be armed with a deadly weapon; or (3) inflicted or attempted to inflict death or serious injury on the person of another. RSA 636:1, I, III; State v. Glanville, 145 N.H. 631, 633 (2000).

The defendant argues that the evidence presented at trial was not sufficient to support his conviction because it "failed to exclude all rational conclusions consistent with innocence." He asserts that the evidence concerning his "actions in the house was entirely circumstantial," and that "[t]he State conceded that its evidence on the accomplice to armed robbery charge was circumstantial." He contends that if he "did not accompany Hart to or into the room, his presence would not have aided Hart in committing an armed robbery." He further contends that "a rational conclusion remains that [he] entered the room to assist Hart but did not assist in Hart's armed robbery of Rivera." Finally, the defendant argues

---

[1] The State also charged the defendant with burglary and conspiracy to commit armed robbery. The jury convicted him of the conspiracy charge, but acquitted him on the burglary charge. The trial court subsequently granted the defendant's post-trial motion to set aside the conspiracy conviction on grounds not material to the issues raised on this appeal.

that "RSA 626:8, VI(c) makes lack of renunciation an element of the offense," and that the "State was required to admit sufficient evidence that [he] did not abandon his intent to aid Hart but [the State] failed to do so."

█ To prevail on a challenge to the sufficiency of the evidence, a defendant must show that "no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt." *State v. Langill*, 161 N.H. 218, 228 (2010). Where the evidence does not consist solely of circumstantial evidence, it need not exclude all rational conclusions other than guilt. *See State v. Saunders*, 164 N.H. 342, 351 (2012). On the other hand, where the evidence is solely circumstantial, the inferential chain of circumstances must be of sufficient strength that guilt is the sole rational conclusion. *See id.*

█ As an initial matter, we note that the State disputes that it "conceded that its evidence on the accomplice to armed robbery charge was circumstantial." We agree that the State did not make this concession. The record establishes that the prosecutor merely informed the court that "plenty of circumstantial evidence" supported the charges against the defendant. The prosecutor also noted that witness testimony and physical evidence recovered from Longval's house supported the charges. *See State v. Newcomb*, 140 N.H. 72, 80 (1995) (direct evidence includes "the testimony of a person who claims to have personal knowledge of facts about the crime charged" (quotation omitted)).

█ Based upon the evidence presented at trial, we conclude that the defendant has failed to show that "no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt." *Langill*, 161 N.H. at 228. Although there was no direct evidence of what transpired inside the house, the totality of the evidence, both direct and circumstantial, was sufficient to support a conclusion beyond a reasonable doubt that an armed robbery occurred and that the defendant aided and agreed to assist Hart in its commission. Sallies testified that the defendant told Hart and her that he wanted to commit robbery, traveled with Hart and her to the destination of the planned robbery, directed her to park behind Longval's house before commission of the robbery, and prepared for the robbery by wearing a ski mask and arming himself with a knife. The defendant also admitted that he was inside the house during the robbery and used force against Rivera. Moreover, the State presented evidence that a ski mask and rubber glove recovered from the scene tested positive for the defendant's DNA and that Hart was found wearing rubber gloves with a baseball bat

nearby. Viewing all the evidence and all reasonable inferences from it in the light most favorable to the State, the jury could have found that the defendant, with the purpose of promoting or facilitating its commission, aided Hart in committing armed robbery. *See* RSA 636:1; RSA 626:8.

■ Insofar as the defendant argues that RSA 626:8, VI(c) makes lack of renunciation an element of the offense, and that the State was required to prove that he did not abandon his intent to aid Hart, we conclude that the defendant failed to preserve this issue for appellate review.[2] *See State v. Winward*, 161 N.H. 533, 542 (2011). He did not make this argument in his motion to dismiss for insufficient evidence. Nor did he object to the trial court's jury instructions, which did not inform the jury that lack of renunciation under RSA 626:8 VI(c) is an element of accomplice liability. We have "consistently held that we will not consider issues raised on appeal that were not presented in the [trial] court." *State v. Winstead*, 150 N.H. 244, 246 (2003) (quotation omitted). "This requirement is designed to discourage parties unhappy with the trial result to comb the record, endeavoring to find some alleged error never addressed by the trial judge that could be used to set aside the verdict." *LaMontagne Builders v. Bowman Brook Purchase Group*, 150 N.H. 270, 274 (2003) (quotation omitted).

*II. Defense of Another Instruction*

■ The defendant next argues that the trial court erred in failing to give an instruction on defense of another under RSA 627:4.

RSA 627:4, I, provides in pertinent part:

> A person is justified in using non-deadly force upon another person in order to defend himself or a third person from what he reasonably believes to be the imminent use of unlawful, non-deadly force by such other person, and he may use a degree of such force which he reasonably believes to be necessary for such purpose.

We have held that when there is "some evidence" that the defendant used force in defense of another, conduct "negating such a defense becomes an element of the offense that the State must prove beyond a reasonable doubt." *State v. Etienne*, 163 N.H. 57, 81 (2011); *State v. Hast*, 133 N.H. 747, 749-50 (1990).

---

[2] RSA 626:8, VI(c) provides that a person is not an accomplice if he "terminates his complicity prior to the commission of the offense and wholly deprives it of effectiveness in the commission of the offense or gives timely warning to the law enforcement authorities or otherwise makes proper effort to prevent the commission of the offense." *See Formella*, 158 N.H. at 116.

At the close of the fifth day of trial, the trial court reviewed jury instructions with the parties. Because the defendant had filed a pretrial notice reserving the right to argue that if he used force against Rivera "he did so in order to defend himself or a third person," the court asked defense counsel whether he was planning to pursue such a defense. Defense counsel responded that he would pursue such a defense if the defendant testified. The court then informed the parties that, depending entirely upon whether the defendant testified, it would instruct the jury regarding self-defense and defense of another in accordance with relevant sections of the New Hampshire Bar Association's Criminal Jury Instructions. *See N.H. Bar Assoc. Criminal Jury Instructions* 3.10, 3.13, 3.14 (1985) (hereinafter "model jury instructions").

The defendant subsequently testified that he did not participate in an armed robbery with Hart. He testified that, on the day of the alleged robbery, Hart asked him to arrange a conversation with Rivera at Longval's house. The defendant agreed and traveled with Sallies and Hart from Laconia to Meredith. The defendant, Hart, and Rivera then spoke at Longval's house. The conversation left Hart not "totally happy with [Rivera]." The defendant and Hart then exited the house and returned to the car. The defendant went to a neighbor's house while Hart and Sallies argued. After the defendant returned from the neighbor's house, Sallies told him that Hart had gone back inside Longval's house to "take care of" Rivera. The defendant followed in pursuit. Upon reaching the third floor of the house, the defendant heard "[Hart] getting stabbed repeatedly." He then saw Rivera and Hart struggling over a baseball bat and Rivera "stabbing [Hart] in the chest." The defendant attempted to break up the fight by pushing Rivera against a wall. Rivera, in turn, began stabbing the defendant. The defendant eventually managed to escape, but not before sustaining serious injuries.

Based upon the defendant's testimony, the court and parties revisited the issue of whether the defendant was entitled to the model jury instructions on self-defense and defense of another. The State argued that he was not entitled to the instructions because he was "not charged with assault" and the jury would not reach "the issue of . . . defense of another" because it had nothing to do with the charges against the defendant. The defendant responded that the defense applied to the charge of being an accomplice to armed robbery because it involved the use of force. He noted that RSA 627:1 (2007) provides that "[c]onduct which is justifiable under this chapter constitutes a defense to any [offense]." More specifically, he argued that, because the indictment charging him with being an accomplice to armed robbery "alleged, if not the use of force, certainly the threat of force," then "self defense or defense of another would be a justification for using force"

and would *"negate* one of the elements of the offense." (Emphasis added.) The State responded that to convict the defendant of being an accomplice to armed robbery the jury only needed "to find that the [d]efendant accompanied [Hart], that he was wearing a mask, gloves, and had a knife with him." It further argued that "it [did]n't matter if he got up to the room and went into the room on self defense." After considering the parties' arguments, the court ruled that, although sufficient evidence supported that the defendant acted in self-defense,[3] the defendant was not entitled to jury instructions on self-defense or defense of another as a matter of law. It informed defense counsel: "I'm going to deny your request for model instructions [on self-defense and defense of another], all rights reserved."

On appeal, the defendant argues that the trial court's refusal to instruct the jury on defense of another was a structural error, requiring reversal of his conviction. He argues that he was entitled to an instruction on defense of another because the trial court found that sufficient evidence supported the defense and because it applies to the offense of being an accomplice to armed robbery. He contends that "[w]ithout knowing the law about when a person is entitled to use non-deadly force, the jury was unable to properly judge whether [the defendant's] admitted force could be legally justified or could only be used to determine whether the elements of the offense had been proven."

■ Whether a particular jury instruction is necessary, and the scope and wording of the instruction, are within the sound discretion of the trial court. *State v. Hernandez*, 159 N.H. 394, 400 (2009). We review the trial court's decisions on these matters for an unsustainable exercise of discretion. *Id.* "When reviewing jury instructions, we evaluate allegations of error by interpreting the disputed instructions in their entirety, as a reasonable juror would have understood them, and in light of all the evidence in the case." *State v. Davidson*, 163 N.H. 462, 472 (2012) (quotation omitted). "We determine whether the jury instructions adequately and accurately explain each element of the offense and reverse only if the instructions did not fairly cover the issues of law in the case." *Id.* (quotation omitted).

■■ As an initial matter, we reject the defendant's argument that the trial court was required to instruct on defense of another because it found

---

[3] The trial court informed the parties that sufficient evidence supported that the defendant acted in self-defense, not defense of another. Nevertheless, we understand the ruling to include a finding that there was sufficient evidence that the defendant acted in self-defense *or* defense of another. *Cf. Hast*, 133 N.H. at 748-49 ("The court's chosen words did not include 'defense of another'. We are convinced that the court and the defendant intended that the proposed and adopted objection include the 'defense of another' objection under the self-defense objection rubric.").

that there was sufficient evidence that the defendant used force in defense of Hart. Although we have held that a "trial court must grant a defendant's requested instruction on a specific defense if there is some evidence to support a rational finding in favor of that defense," *State v. Vassar*, 154 N.H. 370, 373 (2006), this requirement presumes that the requested instruction is legally available in light of the charged offense and the evidence adduced at trial. In other words, the trial court correctly concluded that it also had to determine whether the defendant was legally entitled to the instruction. *Cf. State v. Furgal*, 164 N.H. 430, 435 (2012) ("whether a statute provides a basis for a requested jury instruction raises a question of statutory interpretation, which we review *de novo*"). And although the defendant broadly argues that "the trial court erred in failing to instruct the jury on defense of another," we review only whether the trial court erred in failing to give the jury instructions considered and discussed at trial. *See State v. Perri*, 164 N.H. 400, 410 (2012) (refusing to consider a jury instruction that the defendant did not request); *cf. State v. Blomquist*, 153 N.H. 216, 223 (2006) ("Providing the trial court with the opportunity to correct error is particularly appropriate where an alleged error involves a jury instruction." (quotation omitted)).

 Our case law distinguishes between what we have called a "theory of defense" and a "theory of the case." A trial court must instruct a jury on a defendant's "theory of defense," but not on a "theory of the case." *See State v. Bruneau*, 131 N.H. 104, 117-18 (1988). A "theory of defense" is akin to a "civil plea of confession and avoidance, by which the defendant admits the substance of the allegation but points to facts that excuse, exonerate or justify his actions such that he thereby escapes liability." *Id.* (quotation omitted); *State v. Guaraldi*, 124 N.H. 93, 97 (1983). It "is a proposition about the legal significance of claimed facts, and it thus falls within the scope of a judge's responsibility to instruct the jury on the law." *Bruneau*, 131 N.H. at 117-18. By contrast, a "theory of the case" is "simply the defendant's position on how the evidence should be evaluated and interpreted." *Id.*; *State v. Shannon*, 125 N.H. 653, 662 (1984) (defendant was not entitled to requested jury instruction because he was "not admitting liability and pointing to facts that exonerate, excuse or justify his conduct, but [was] denying criminal behavior"); *State v. Ramos*, 149 N.H. 272, 274-76 (2003) (defendant charged with aggravated felonious sexual assault was not entitled to instruction on defense of consent because although he admitted to sexually penetrating the victim, in order for jury to find, as charged, that he did so through concealment or surprise, jury necessarily had to find that victim did not consent). In other words, a defendant is not entitled to a jury instruction on a proffered "defense" when he simply presents "evidence of

a different factual scenario than that presented by the State, and then argue[s] how the facts and evidence should be evaluated or interpreted by the jury." *Ramos*, 149 N.H. at 274. Such a defense creates a "credibility contest," which we have recognized "is not a legal defense to any charge." *Id.*

██ Here, the defendant did not admit to *any* of the facts alleged in the indictment charging him with being an accomplice to armed robbery. Instead of admitting that he aided Hart in the commission of the crime and pointing to facts to "excuse, exonerate or justify his actions," *Bruneau*, 131 N.H. at 117, the defendant testified to a "different factual scenario than that presented by the State." *Ramos*, 149 N.H. at 274. In short, the defendant asked the jury to disbelieve Sallies' testimony that he planned and committed armed robbery, and to believe instead his testimony that he and Hart went to Longval's house to have a conversation with Rivera, a conversation which led Rivera to stab Hart and prompted the defendant to use force in defense of Hart. Thus, our precedents demonstrate that the trial court did not err in failing to instruct the jury in accordance with the model jury instructions on self-defense and defense of another.

Nevertheless, the defendant contends that his admitted use of force against Rivera may have been improperly utilized by the jury to establish the physical force element of the crime of robbery, *see* RSA 636:1, or to establish that the defendant, as charged in the indictment, agreed to provide assistance to Hart in robbing Rivera. Thus, he appears to argue that the trial court should have instructed the jury on defense of another under RSA 627:4 because, without such an instruction, the jury may have misunderstood the legal significance of his admitted use of force and found him guilty of being an accomplice to armed robbery based upon justifiable conduct under RSA 627:4. *See State v. Gingras*, 162 N.H. 633, 639 (2011) (defendant entitled to jury instruction on legal significance of claimed facts).

We need not decide, however, whether the defendant would have been entitled to a jury instruction narrowly crafted to address this concern. If the model jury instructions on self-defense and defense of another had been given, conduct negating the defenses would have become an element of the offense that the State had to prove beyond a reasonable doubt. *See Etienne*, 163 N.H. at 81. The jury would have been told, "If you have reasonable doubt as to whether the defendant acted in self-defense [or in defense of another], you must find the defendant not guilty." N.H. BAR ASSOC. CRIMINAL JURY INSTRUCTIONS 3.10. Such an instruction would have been erroneous as a matter of law because, unlike in a typical self-defense or defense-of-another situation, here, the defendant could have used force

defensively against Rivera and *also* have been guilty of being an accomplice to armed robbery. The State presented evidence independent of the defendant's admitted use of force that the defendant or Hart used or threatened physical force in furtherance of robbing Rivera. The State also presented evidence independent of the defendant's admitted use of force that he agreed to provide assistance to Hart in the commission of the robbery. In short, had the trial court given the model jury instructions on self-defense and defense of another, the jury would have been told to acquit the defendant even if it found evidence sufficient to convict him independent of his admitted use of force. Accordingly, we conclude that the trial court did not err in refusing to give the model jury instructions on self-defense and defense of another.

### III. Hearsay Objection

The defendant next argues that the trial court erred in sustaining a hearsay objection during his cross-examination of Longval. The following exchange preceded the objection:

Q: Do you ever remember Pat McIntyre . . . coming over to visit on [the day of the robbery] at your house?

A: I don't remember. Pat and his mother both were at my house a lot. I was friends with both of them.

Q: Do you remember a conversation between yourself, . . . David Rivera, and Pat McIntyre at your house?

A: I don't remember.

Q: Okay. Well, do you remember David Rivera telling Pat that he was planning on trying to get . . . .

At this point, the State objected. At sidebar, the State argued that defense counsel was "getting into hearsay." In response, defense counsel made the following offer of proof: "I don't know what this witness is going to say, but I have a good faith [belief] . . . based on the statement by Pat McIntyre who said that David Rivera told him he was planning on robbing [the defendant] for $20.00." Defense counsel argued that under New Hampshire Rule of Evidence 803(3) "an out of court statement about somebody's plans and intent to do something in the future is admissible." After defense counsel and the prosecutor briefly discussed the scope of Rule 803(3), the trial court sustained the objection.

The defendant maintains that the trial court erred because Rivera's alleged statement was admissible as "a statement of Rivera's then existing plan or intent." Rule 803(3) provides that an out-of-court statement may be

admitted for the truth of the matter asserted if it is "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed." *State v. Hall*, 152 N.H. 374, 378 (2005) (quotation omitted); N.H. R. Ev. 803(3). Thus, according to the defendant, "[w]here the State offered no direct evidence of what happened in the room and admitted Rivera's lack of credibility, and where [the defendant] offered a contrasting version of what had occurred, consistent with his innocence, the court's exclusion of this evidence prejudiced [his] case." He argues that the excluded statement "would have corroborated [the defendant's] testimony that he had interacted with Rivera before the night in question," and "may have provided additional reasonable doubt about the State's theory of the case."

"We review challenges to a trial court's evidentiary rulings under our unsustainable exercise of discretion standard and reverse only if the rulings are clearly untenable or unreasonable to the prejudice of a party's case." *State v. Brooks*, 164 N.H. 272, 283 (2012) (quotation omitted). In determining whether a ruling is a proper exercise of judicial discretion, we consider whether the record establishes an objective basis sufficient to sustain the discretionary decision made. *State v. McDonald*, 163 N.H. 115, 121 (2011). The defendant bears the burden of demonstrating that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. *See State v. Ruggiero*, 163 N.H. 129, 135 (2011).

▬▬ ▬▬ In order to predicate error on a trial court's ruling excluding evidence, the proponent of the evidence bears the burden of making a contemporaneous offer of proof sufficient to apprise the court of the specific nature of the excluded evidence. *See* N.H. R. Ev. 103(b); *State v. Saulnier*, 132 N.H. 412, 413-14 (1989). "[T]he object [of Rule 103(b)] is to advise the trial judge of a claim of error [so] that [it] can be addressed before any damage is beyond correction in the trial court." *Saulnier*, 132 N.H. at 414 (quotation omitted). As in *Saulnier*, in this case the question asked by defense counsel sought to elicit an out-of-court statement made by Rivera that was presumptively hearsay. N.H. R. Ev. 801(c) (" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). It thus was the defendant's burden to make a sufficiently specific offer of proof as to the substance of the expected testimony to satisfy the trial court that what he sought to elicit did not constitute inadmissible hearsay. *Saulnier*, 132 N.H. at 414-15; *see Bohan v. Ritzo*, 141 N.H. 210, 218 (1996) (offer of proof must "set[ ] forth the specific basis for

admissibility of the proffered evidence"); *accord United States v. Adams*, 271 F.3d 1236, 1241 (10th Cir. 2001) ("[M]erely telling the court the content of . . . proposed testimony is not an offer of proof. In order to qualify as an adequate offer of proof, the proponent must, first, describe the evidence and what it tends to show, and, second, identify the grounds for admitting the evidence." (citations and quotations omitted)); *People v. Morrison*, 101 P.3d 568, 586 (Cal. 2004) ("Evidence is properly excluded when the proponent fails to make an adequate offer of proof regarding the relevance or admissibility of the evidence."); *State v. Sweeney*, 151 N.H. 666, 677 (2005) (proponent of hearsay statement has burden to demonstrate admissibility under applicable exception). The defendant failed to meet this burden.

■ Although counsel told the court he had a good faith basis for believing that Rivera told McIntyre he planned to rob the defendant, conspicuously absent from the offer of proof was any indication of a basis for believing that Longval heard Rivera make this statement — as opposed to having been told by McIntyre that this is what Rivera said, which would make Rivera's declaration double hearsay. *See Simpkins v. Snow*, 139 N.H. 735, 737-38 (1995). At the time the objection was posed, Longval had already testified that she did not remember a conversation between herself, Rivera and McIntyre on the day of the robbery, and had further said that McIntyre was a good friend who was at her house frequently. In addition, counsel acknowledged that he could not predict what Longval would say in answer to the question at issue. Given these circumstances, even if we assume that Rivera's statement falls within the state of mind hearsay exception under Rule 803(3), the trial court could sustainably have found that the defendant failed to establish an objective basis for concluding that the question would not elicit inadmissible hearsay about what McIntyre may have told Longval. *Id.*

In any event, even if we assume that the defendant was entitled to inquire whether Longval remembered hearing Rivera tell McIntyre that he planned to rob the defendant, we cannot conclude that the trial court's ruling prejudiced the defendant. Based on Longval's testimony and defense counsel's offer of proof, we have no basis for concluding that Longval heard Rivera's statement and thus no foundation for determining what her testimony would have been. *See McMullin v. Downing*, 135 N.H. 675, 679 (1992) (holding that we could not "weigh the prejudice suffered" as a result of the exclusion of plaintiff's testimony because "we ha[d] no way of knowing what the plaintiff's testimony would have been"); *Saulnier*, 132

N.H. at 415 ("Absent an offer of proof indicating what response, if any, the question sought to elicit, it is impossible to ascertain what the testimony of the witness would have been.").

*IV. Invocation of Right to Counsel*

Finally, the defendant argues that the trial court committed plain error in admitting testimony that he invoked his right to counsel when he was arrested. At trial, Detective Corporal John Eichhorn testified without objection:

> Q: Did anything happen . . . in transit in the police car on the way to your police station?
> A: Yes. . . . [The defendant] had invoked his right to counsel. So we did not ask him any questions. During the transport to the jail he said to me, that he wished he could talk to me. Because what he had read in the paper was wrong. I didn't ask him any questions. I didn't answer him in any way, and just kept letting him talk. He then stated to me that what he had read in the paper was wrong . . . . [I]t said in the paper that he had brought the knife with him that Rivera had taken away from him. Which he stated was not true at the time.

The defendant argues that Eichhorn's testimony that the defendant invoked his right to counsel violated Part I, Article 15 of the State Constitution and the Fifth and Fourteenth Amendments to the Federal Constitution. He contends that "[a] defendant may invoke [his] right to remain silent by requesting the presence of a lawyer" and that the "choice to remain silent in the face of police questioning cannot be used in the State's case-in-chief to infer guilt."[4] He argues that the error affected his substantial rights and the fairness of the trial.

Under the plain error rule, we may consider errors not raised before the trial court. *State v. Russell*, 159 N.H. 475, 489 (2009); SUP. CT. R. 16-A. To find plain error: "(1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings." *Randall v. Abounaja*, 164 N.H. 506, 510 (2013). The rule is used sparingly and is limited to those circumstances in which a miscarriage of justice would otherwise result. *Id.* "We have looked to the federal plain error analysis in applying our plain error rule." *State v. Cassavaugh*, 161 N.H. 90, 100 (2010).

---

[4] The record does not establish whether the defendant received *Miranda* warnings before invoking his right to counsel. *See Miranda v. Arizona*, 384 U.S. 436 (1966).

As an initial matter, we disagree with the defendant's assertion that the trial court "admitted" testimony that he invoked his right to counsel when he was arrested. The trial court did not rule on the admissibility of Eichhorn's testimony. Eichhorn's testimony that the defendant invoked his right to counsel was a passing reference in response to the prosecutor's general question about whether anything happened in the police car on the way to the police station following the defendant's arrest. *Cf. Cassavaugh*, 161 N.H. at 99-100 (trial court committed plain error when it admitted portion of transcript and videotaped recording of defendant's invocation of his right to silence). The pertinent question is whether the trial court erred in failing *sua sponte* to strike or issue a curative instruction with respect to Eichhorn's testimony that the defendant invoked his right to counsel. *See United States v. Rodriguez*, 302 Fed. Appx. 468, 471 (7th Cir. 2008) (reviewing whether the district court's "failure to strike [witness testimony] or give a limiting instruction *sua sponte*" constituted plain error); *United States v. Newton*, 326 F.3d 253, 262 (1st Cir. 2003) (reviewing whether trial court committed plain error in failing to instruct the jury *sua sponte* to disregard witness statement).

██ ██ We conclude that the defendant has not demonstrated that the trial court committed plain error.

> Plain is synonymous with clear or, equivalently, obvious. At a minimum, a court of appeals cannot correct an error . . . unless the error is clear under current law. Thus, an error is plain if it was or should have been obvious in the sense that the governing law was clearly settled to the contrary . . . . Generally, when the law is not clear at the time of trial, and remains unsettled at the time of appeal, a decision by the trial court cannot be plain error.

*State v. Lopez*, 156 N.H. 416, 424 (2007) (quotations and citations omitted). We have never held that a trial court must *sua sponte* strike or issue a curative instruction with respect to witness testimony. Indeed, in another context, we have suggested that courts should refrain from taking such action. *See State v. King*, 146 N.H. 717, 722 (2001) (trial court erred "when it *sua sponte* asserted the privilege against self-incrimination on the witness's behalf"). This is not a case in which the trial court allowed the prosecutor to engage in improper questioning of a witness. *Lopez*, 156 N.H. at 424 ("permitting the prosecutor to ask the defendant to opine upon the credibility of other witnesses was error"). Here, the prosecutor did not deliberately elicit that the defendant invoked his right to counsel or impeach the defendant with his invocation.

We also note that defense counsel may have had strategic reasons for not objecting to the testimony of the defendant's invocation of his right to

counsel. In the same answer in which Eichhorn testified that the defendant invoked his right to counsel, he also testified to the defendant's arguably exculpatory statements "that he wished he could talk" and that a newspaper account of the robbery was wrong. Thus, defense counsel may have refrained from objecting because of fear that the court would strike Eichhorn's entire answer, including the defendant's arguably exculpatory statements. Defense counsel also may have concluded that the defendant's statement about the newspaper story being wrong would take on added credibility if the jury understood that the defendant was aware he had no obligation to speak to the police. *See United States v. Lin*, 101 F.3d 760, 770 (D.C. Cir. 1996) ("We cannot conclude, however, that it was plain error for the court not to *sua sponte* strike the remark or give a curative instruction limiting the effect of the comment. Defense counsel may have had strategic reasons for not objecting. . . ."); *Massey v. State*, 771 P.2d 448, 453 (Alaska Ct. App. 1989) ("[U]nless the record precludes the possibility that counsel's actions may have been tactical, a finding of plain error is rarely appropriate."); *United States v. Smith*, 459 F.3d 1276, 1302 (11th Cir. 2006) (Tjoflat, J., concurring) (noting that if an appellate court were to review evidentiary rulings for plain error without factoring in counsel's strategic reasons not to object, the court would thereby provide counsel with a strategic reason not to object).

*Affirmed.*

DALIANIS, C.J., and HICKS, CONBOY and BASSETT, JJ., concurred.