NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2013-512

THE STATE OF NEW HAMPSHIRE

v.

KEVIN RAWNSLEY

Argued:  May 15, 2014
Opinion Issued: October 17, 2014

Joseph A. Foster, attorney general (Heather A. Flanner, attorney, on the brief and orally), for the State.

Christopher M. Johnson, chief appellate defender, of Concord, on the brief and orally, for the defendant.

CONBOY, J.  The defendant, Kevin Rawnsley, appeals his conviction by a jury of robbery.  See RSA 636:1 (2007).  On appeal, he argues that the Superior Court (McNamara, J.) committed plain error when it failed to strike certain testimony by the defendant's former wife, Stacey Rawnsley.  See Sup. Ct. R. 16-A.  We affirm.

The parties do not dispute, or the record establishes, the following facts.  The defendant's conviction arises out of events that occurred on February 16, 2008.  At approximately 10:00 p.m. that night, Mohammed Ahmed was working at the K2 Market in Pittsfield when a masked man entered the store.

When Ahmed asked the man for his name, the man replied, "Jon Benedict." The man approached Ahmed, who was turning off lights in the refrigerated display cases, and struck him on the head with a baseball bat, knocking him to the ground. The man then struck the cash register with the bat until it opened, stuffed cash from the register into his sweatshirt, and fled the store.

A passerby saw the man flee the store and heard Ahmed's cries for help. The passerby called 911, and, when the police arrived, described to them the man's clothing. A police tracking dog followed a scent from the store through parts of downtown Pittsfield. The track failed to lead the police to a suspect.

No suspect was identified to the police until four years later, in 2012, when Stacey contacted the police, offering to provide information about the K2 Market robbery in exchange for consideration with regard to criminal charges that were then pending against her. Stacey reported to the police, and testified at trial, that she believed that the defendant had committed the robbery. Ultimately, Stacey received a reduced sentence on her criminal charges.

By the time of the defendant's trial, he and Stacey were no longer married. However, they were still married on the date of the robbery, February 16, 2008. At trial, Stacey testified that, on that evening, she and the defendant had been using cocaine at home for approximately two hours when they argued. She saw the defendant leave their Pittsfield apartment while wearing black clothes, including a hooded sweatshirt, a cold-weather face mask, and gloves. She also saw him take a wooden baseball bat.

Stacey testified that the defendant left the apartment at approximately 9:45 p.m. and returned approximately thirty minutes later. She testified that "between . . . two and five minutes after he came in, two cop cars went down [our street] with their blue lights on." Stacey saw the defendant pull money in small bills out of his sweatshirt. When Stacey asked the defendant where he had been, he told her not to worry about it.

Stacey testified that after seeing a television news report about the robbery, she confronted the defendant with her suspicion that he was the robber. The defendant eventually admitted that he had robbed the store, and described details of the crime to her.

Defense counsel's theory of the case was that Stacey lied when she accused the defendant of committing the robbery and that she was motivated to lie by her desire to minimize her future incarceration. To impeach her credibility, defense counsel repeatedly questioned Stacey about her motive to lie, using her deposition testimony and statements she made in recorded telephone calls from jail. In one March 2012 telephone call, Stacey told a friend that she was "facing 20 to 40 years in the State prison" and that giving

the police information about the robbery was "[p]robably the only thing" that would allow her to be released on bail. In his opening statement, defense counsel explained:

> This case was not solved for four years because Stacey Rawnsley wasn't arrested for four years. . . . Some time in February, March 2012, . . . she decides to come forward.
>
> . . . .
>
> So this case is not a whole bunch of CSI. This case is not a bunch of fingerprints. The police saying that's the person. The police couldn't solve this for four years, until Stacey Rawnsley was behind the eight ball and needed some assistance. [Assessing] her credibility is the most and the single most important thing that you'll have to do in the next couple of days. Please watch her closely.

Defense counsel reiterated this theme in his closing argument:

> You can and should find that Stacey Rawnsley was motivated by the fact that she received consideration for her sentence, that she dislikes my client, that she has malice towards my client, whatever you want to impute into her motives and bias. That's your role.
>
> . . . .
>
> [It] was four years [later] she gave the statement [to the police]. . . . Why? Because it's when she was arrested.
>
> It's when she needed some consideration. And it's when she offered this information in exchange for that consideration. And I'll only say it one more time, because it's my last time. She is unworthy of any belief. She is not credible. You should completely discount her testimony because you can.
>
> . . . [Y]ou must scrutinize her testimony because she has something at stake. She has an interest in the outcome. . . . She had an interest in her freedom, her continued freedom, in her early release from charges she had pending[,] to testify falsely against my client. Please hold her accountable for that.

In a colloquy with the court and opposing counsel, defense counsel stated that because his "theory of this case is the woman is lying," he was "not concerned about what comes out of her mouth."

3

On appeal, the defendant argues that it was error to admit much of Stacey's testimony because it "convey[ed] information covered by the marital evidentiary privilege." See N.H. R. Ev. 504. Because he never objected to that testimony, the defendant argues under the plain error rule. See Sup. Ct. R. 16-A. Under the plain error rule, we may consider errors not raised before the trial court. State v. Guay, 164 N.H. 696, 703 (2013). The rule should be used sparingly, its use limited to those circumstances in which a miscarriage of justice would otherwise result. Id. at 704. Our plain error rule sets forth four requirements: (1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity, or public reputation of the judicial proceedings. Id. "We have looked to the federal plain error analysis in applying our plain error rule." State v. Noucas, 165 N.H. 146, 160 (2013) (quotation omitted).

The State contends that there was no error in this case for two reasons. First, the State argues, the trial court did not err by admitting Stacey's testimony related to the defendant's conduct on the evening of February 16, 2008, because that testimony was not subject to the marital evidentiary privilege. See State v. Pelletier, 149 N.H. 243, 247 (2003) (only acts that are "attributable to the husband-wife relation" are subject to the evidentiary privilege (quotation omitted)). Second, the State argues, the trial court did not err by admitting Stacey's testimony related to the defendant's verbal statements on that night because, although that testimony was subject to the marital evidentiary privilege, the defendant waived the privilege by not objecting to the testimony. See N.H. R. Ev. 510 Reporter's Notes (stating that evidentiary privilege is waived "by allowing testimony of another to the privileged matter without objection").

The defendant contends that Stacey's testimony about his conduct, like her testimony about his verbal statements, is subject to the marital evidentiary privilege. He further asserts that his counsel's failure to object to the testimony did not constitute a waiver of the privilege.

We need not address these arguments because we conclude that any alleged error was not plain. See Noucas, 165 N.H. at 160-62. As an initial matter, because the defendant never objected to the challenged testimony, and the trial court never ruled it admissible, we agree with the defendant that "[t]he pertinent question is whether the trial court erred in failing sua sponte to strike" that testimony. Id. at 161. Even if the failure to strike the testimony was somehow "error," that error was not plain. See id.

"Plain is synonymous with clear or, equivalently, obvious." Id. (quotation omitted). "At a minimum, a court of appeals cannot correct an error . . . unless the error is clear under current law. Thus, an error is plain if it was or should have been obvious in the sense that the governing law was clearly settled to the

4

contrary . . . ." Id. (quotation omitted). "Generally, when the law is not clear at the time of trial, and remains unsettled at the time of appeal, a decision by the trial court cannot be plain error." Id. (quotation omitted).

"We have never held that a trial court must sua sponte strike . . . [a] witness['s] testimony," id., and we decline to do so in this case. Although, conceivably, a trial court would have such an obligation when there could be no dispute that certain testimony impaired the defendant's substantial rights and adversely affected the fairness, integrity, or public reputation of judicial proceedings, the instant case does not present such a circumstance. See id.

"What is often overlooked in the rote application of the plain error standard is that, without objection, it is almost impossible to conclude that the [trial] court committed error at all." United States v. Smith, 459 F.3d 1276, 1299-300 (11th Cir. 2006) (Tjoflat, J., concurring). "It is one thing to say that evidence, if objected to, should have been excluded; it is quite another to say that admission of evidence over no objection is error in some abstract sense." Id. at 1300 (Tjoflat, J., concurring). The problem with the second scenario "is that defense counsel can waive evidentiary restrictions, and often has legitimate strategic reasons for doing so." Id. (Tjoflat, J., concurring). Under those circumstances, "[r]eviewing admission of evidence for plain error . . . can serve to transform defense counsel's strategic decisions into [trial] court errors." Id. (Tjoflat, J., concurring). In this way, "[t]rial counsel's sound strategy . . . become[s] plain error at appellate counsel's urging." Id. (Tjoflat, J., concurring).

Here, defense counsel "may have had strategic reasons for not objecting" to Stacey's testimony. Noucas, 165 N.H. at 161; see United States v. Lin, 101 F.3d 760, 770 (D.C. Cir. 1996) (declining to conclude "that it was plain error for the court not to sua sponte strike" a witness's remark and observing that "[d]efense counsel may have had strategic reasons for not objecting"). Defense counsel may have decided not to object so as to develop his theory of the case, which was that Stacey was a liar and that his client was not the robber. See People v. Hommerson, 927 N.E.2d 101, 113 (Ill. App. Ct. 2010) (observing that defense counsel may have elected to not object to testimony on marital privilege grounds so as to "delve into . . . conversations [that] help[ed] establish his theory of the case"). As defense counsel stated: "My theory of this case is the woman is lying, and . . . I'm not concerned about what comes out of her mouth."

The decision of whether to object to inadmissible evidence is an aspect of trial strategy that counsel may make on behalf of a defendant. 3 W. LaFave et al., Criminal Procedure § 11.6(a), at 183-84 (3d ed. 2007); see Sexton v. French, 163 F.3d 874, 885 (4th Cir. 1998) ("Decisions that may be made without the defendant's consent primarily involve trial strategy and tactics,

5

such as what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." (quotations omitted)).  To the extent that the defendant contends that his counsel's decision to not object to Stacey's testimony was constitutionally deficient, his remedy is to seek a new trial on the ground of ineffective assistance of counsel.  See State v. Thompson, 161 N.H. 507, 524-28 (2011) (observing that, generally, an ineffective assistance of counsel claim should be presented to the trial court in the first instance).

Affirmed.

DALIANIS, C.J., and HICKS, LYNN and BASSETT, JJ., concurred.