NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
Case No. 2022-0736
Citation: State v. Collins, 2024 N.H. 22

THE STATE OF NEW HAMPSHIRE

v.

TEAGAN DAVID COLLINS

Argued: March 28, 2024
Opinion Issued: May 14, 2024

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Elizabeth C. Woodcock, senior assistant attorney general, on the brief and orally), for the State.

Pamela E. Phelan, senior assistant appellate defender, of Concord, on the brief and orally, for the defendant.

DONOVAN, J.

[¶1] Following a jury trial in Superior Court (English, J.), the defendant, Teagan David Collins, was convicted on two counts of criminal threatening: one count alleging criminal threatening with a deadly weapon, see RSA 631:4, I(a) (2016); RSA 625:11, V (2016), and one count alleging criminal threatening

against a law enforcement officer, see RSA 631:4, I(d) (2016); RSA 651:6, I(g) (Supp. 2023). He was also convicted of misdemeanor disorderly conduct. See RSA 644:2 (2016). On appeal, he challenges only his conviction for criminal threatening with a deadly weapon, arguing that the trial court erred in refusing to instruct the jury on self-defense. We affirm.

[¶2] At trial, the following evidence was presented to the jury. On the evening of October 29, 2021, the defendant went to a restaurant and nightclub in Portsmouth with his coworkers. The defendant was told that he could not have a drink on the dance floor. Later, after receiving complaints regarding the defendant's behavior, the nightclub's head of security told the defendant to leave the nightclub and escorted him to the building's exit.

[¶3] Shortly thereafter, the head of security and another employee responded to an "altercation" in front of the building involving the defendant. The head of security spoke with the defendant and explained that he could not reenter the nightclub that night. The defendant claimed that he was "cordial" during this interaction, but the head of security testified that the defendant was upset and "became enraged." The head of security offered to buy the defendant a drink if he returned to the nightclub another night, and the defendant walked back to his car. Once he returned to his car, the defendant realized that he had left his debit card and jacket behind at the nightclub. He then decided to retrieve a firearm from his car and return to the nightclub to search for his debit card and jacket.

[¶4] The testimony of the defendant and the head of security regarding subsequent events differed. According to the head of security, when the defendant returned to the nightclub, he told the defendant that he was not allowed to reenter, to which the defendant responded by saying, "[Y]ou think I care? I don't -- I don't f***ing care," and by revealing the firearm tucked into his waistband. The head of security testified that the defendant grabbed the firearm, moved it up and down, looked back at him, and said, "it'd only take one shot." The head of security then instructed another employee to call the police. The defendant denied revealing the firearm at that time or telling the head of security that "it'd only take one shot." Rather, the defendant testified that, upon returning to the nightclub, he was told that he could not retrieve his debit card but could return the following day. However, the defendant explained that he spoke with an acquaintance outside the nightclub who agreed to retrieve the defendant's belongings for him. The defendant testified that, while he was waiting, the head of security approached him, was "inches from [his] face," and began "escalating the . . . situation."

[¶5] Once the acquaintance returned the defendant's debit card to him, the defendant walked away and the head of security and another employee followed him from the building. According to the head of security, he followed

2

the defendant from "a decent distance," but closely enough so that he could point out the defendant to the police. The other nightclub employee testified that he followed the defendant on the opposite side of the street for approximately one block. The defendant testified that the two employees following him were within approximately ten feet. While walking up the street ahead of the employees, the defendant, who explained that he "believed [he] was acting within [his] rights," lifted up his shirt to reveal the firearm tucked into his waistband. The defendant testified that he revealed the firearm to the two employees "to let [them] know that they should stop following," but he denied putting his hand on the firearm. Soon after, the police intercepted the defendant, and he realized that he was "someone they were looking for."

[¶6] The defendant was subsequently arrested and charged with, as relevant here, one count of criminal threatening with a deadly weapon. The indictment alleged, inter alia, that the defendant "placed or attempted to place [the nightclub's head of security] in fear of imminent bodily injury or physical contact" by "displaying a handgun and/or placing his hand on a displayed handgun and saying to [the head of security] 'You don't even know,' and/or 'It would only take one shot.'"

[¶7] Prior to trial, the defendant filed a notice of defense of justification, stating that he intended to rely on the doctrines of self-defense and defense of property. In the notice, the defendant argued that "[t]o the extent that [he] 'brandished' the gun, he did so only to the extent that he reasonably believed to be necessary for purposes of defending himself and his personal property" and that he believed that, "by informing those present that he had a gun[,] he would be protecting himself from harm and deescalating the situation."

[¶8] At trial, the head of security and another employee of the nightclub, the defendant, and several other witnesses testified. At the close of evidence, the trial court heard arguments on the defendant's request for a jury instruction on self-defense and defense of property. The court denied the request, rejecting the defendant's argument that the nightclub employees unlawfully held his property by preventing him from entering to retrieve his debit card and jacket. Regarding the self-defense instruction, the trial court concluded that "what was missing is evidence that [the defendant] reasonably believed there was going to be an imminent use of unlawful, nondeadly force by such other person." The court reasoned that "there has to be something more than just that he felt threatened." The jury subsequently convicted the defendant of, as relevant here, criminal threatening with a deadly weapon. This appeal followed.

[¶9] On appeal, the defendant argues that the trial court erred when it denied his request to instruct the jury on the display of a firearm as a means of self-defense. As a preliminary matter, the parties disagree as to the proper

3

standard of review. The defendant, relying on State v. Woodburn, 175 N.H. 645, 651 (2023), argues that we should review the trial court's decision de novo. The State asserts that we should apply our unsustainable exercise of discretion standard. See State v. Cavanaugh, 174 N.H. 1, 7 (2020) ("We review the trial court's decision not to give a jury instruction for an unsustainable exercise of discretion."). However, we need not decide the proper standard of review in this case because the defendant's challenge fails under either standard.

[¶10] Self-defense is a pure defense under New Hampshire law. Id. at 8. When evidence of self-defense is admitted, conduct negating the defense becomes an element of the charged offense that the State must prove beyond a reasonable doubt. Id. Therefore, a trial court must grant a defendant's requested jury instruction on a specific defense such as self-defense if there is "some evidence" to support a rational finding in favor of it. Woodburn, 175 N.H. at 651 (quotation omitted).

[¶11] Subject to exceptions not applicable in this case, RSA 627:4, I, provides that "[a] person is justified in using non-deadly force upon another person in order to defend himself . . . from what he reasonably believes to be the imminent use of unlawful, non-deadly force by such other person." "Non-deadly force" is defined as "any assault or confinement which does not constitute deadly force. The act of producing or displaying a weapon shall constitute non-deadly force." RSA 627:9, IV (2016); see also RSA 627:9, II (2016) (defining "[d]eadly force" as "any assault or confinement which the actor commits with the purpose of causing or which he knows to create a substantial risk of causing death or serious bodily injury"). The person "may use a degree of such force which he reasonably believes to be necessary for such purpose." RSA 627:4, I. A belief that is unreasonable, even though honest, will not support the defense. State v. Vassar, 154 N.H. 370, 374 (2006).

[¶12] The defendant argues that the trial court erred in failing to find that there was "some evidence" that he reasonably believed the nightclub employees posed an imminent threat of the use of non-deadly force to him. Specifically, he asserts that there was evidence that the two employees threatened him by following him on the street. He contends that any inconsistencies or contradictions about the strength of the evidence are a matter for the jury, not the trial court, to decide, and therefore the trial court's refusal to instruct the jury on self-defense constitutes reversible error.

[¶13] However, the criminal threatening indictment challenged on appeal alleged that the defendant "placed or attempted to place [the nightclub's head of security] in fear of imminent bodily injury or physical contact" by "displaying a handgun and/or placing his hand on a displayed handgun in his waistband and saying to [the head of security] 'You don't even know,' and/or 'It would

4

only take one shot,' or words to that effect." Accordingly, the indictment alleged that the defendant committed the crime when he confronted the head of security at the nightclub's entrance and not at any point thereafter. Thus, the relevant inquiry is whether the defendant reasonably believed that displaying the firearm when he was at the door of the nightclub attempting to gain reentry to retrieve his property was reasonably necessary to counter the imminent use of non-deadly force at that time.

[¶14] More importantly, the defendant denied engaging in the specific conduct alleged in the indictment. Instead, he maintains that he was cordial with the employees, "wasn't trying to escalate anything," and simply walked away from the confrontation. A defense of justification requires that the defendant admit the substance of the allegation. State v. Noucas, 165 N.H. 146, 155-56 (2013). Here, the defendant offered no such admission. A defendant is not entitled to a jury instruction on a proffered defense when he simply presents evidence of a different factual scenario than that presented by the State. Id. In other words, the defendant asked the jury to disbelieve the testimony of the head of security and to believe instead his testimony that he displayed the firearm only when he walked away from the nightclub and was followed by two employees. Pursuant to our precedents, the defendant was not entitled to a jury instruction on self-defense under these circumstances, and we conclude that the trial court did not err by refusing to instruct the jury on the defendant's theory of the case.

Affirmed.

MACDONALD, C.J., and BASSETT and COUNTWAY, JJ., concurred; HANTZ MARCONI, J., sat for oral argument but subsequently disqualified herself and did not participate in further review of the case.