Belknap
No. 2010-879

## THE STATE OF NEW HAMPSHIRE

v.

## THAVONE SOUKSAMRANE

Argued: October 11, 2012
Opinion Issued: December 21, 2012

*Michael A. Delaney*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Lisa L. Wolford*, assistant appellate defender, of Concord, on the brief, and *Brianna M. Sinon*, assistant appellate defender, of Concord, orally, for the defendant.

DALIANIS, C.J. The defendant, Thavone Souksamrane, appeals his convictions for criminal threatening and felon in possession of a dangerous weapon following a jury trial in Superior Court (*O'Neill*, J.). *See* RSA 631:4 (2007) (amended 2010); RSA 159:3 (2002). On appeal, he argues that the trial court erred in permitting the State to question him about the veracity of other witnesses. The State concedes, as it must, that the questioning in this case was improper. We nevertheless affirm the convictions because of the overwhelming evidence of the defendant's guilt.

The jury could have found the following facts. The victim and the defendant lived in the same apartment building in Laconia. On March 17, 2010, the victim was gardening in the back yard when the defendant invited him to his apartment to talk to him. Once they were inside, the defendant locked the door and pulled out a gun, which was black with a silver streak, and pointed it at the victim. He told the victim to take off his clothes so that the defendant could make sure that he was not concealing any weapons. The victim removed his sweatshirt and hat. Pointing the gun, the defendant then told the victim to stay away from his family or he would kill him. The victim attempted to run away, at which point the defendant tore off the victim's tank top. The victim escaped and ran to his own apartment, where, "all panicked," he told his mother that the defendant was trying to kill him.

The victim's mother called the police. Although the defendant initially refused to leave his apartment to speak with the police, he eventually stepped out onto a landing, where he was handcuffed and detained.

Meanwhile, another officer interviewed the victim. He told the officer that the defendant was referred to as "Taylor," though the victim did not know his real name. Upon inspection, the police determined that the mailbox for the defendant's apartment bore the name "Thavone Souksamrane." The victim, who was "visibly shaken as though something traumatic had happened to him," gave a detailed description of his encounter with the defendant.

The defendant agreed to allow the officers to walk through his apartment to make sure that no one else was inside. When the police asked whether

there was a gun in the apartment, the defendant responded that there was, but that it was not his. When the defendant refused to consent to a search of the apartment, the police obtained a warrant. While executing the warrant, the police discovered: two swords; a hat, sweatshirt, and tank top; and, in the bedroom closet, a locked case. At that point, the defendant was arrested and transported to the Laconia police station for processing. During an inventory of his possessions, the police retrieved a key that opened the lock on the case, revealing a black gun with a silver streak.

Based upon the name, date of birth, and social security number that the defendant provided, the police ran a criminal record check. The record check revealed that in 1995, the defendant pleaded guilty to assault by a prisoner, a felony.

At trial, the defendant represented himself with the assistance of standby counsel. His first witness was his wife. She testified that she bought the gun without telling the defendant, that he did not know there was a gun in the house, and that she had the key to the gun case. When asked whether she was aware that her husband had been convicted of a felony, she answered that she was.

The defendant then took the stand. For the first time, he declared that his name was Jay Verabouth, and that the name that he had given to the police was an alias. He then proceeded to offer an alternative version of what happened in his apartment that day. He testified that he and his wife were at a playground with their children. She became angry because he was drinking beer, so he took her car keys away from her and put them in his pocket so she would not drive away. He then walked back to his apartment and discovered the victim in his bedroom, with the defendant's wife's underwear on his face. The victim then grabbed a sword and attacked him, hitting him in the head. When the defendant wrestled the sword away, the victim ran to the kitchen and grabbed a knife. He attacked the defendant again, saying that he was going to kill him, his wife, and their children and bury them in the back yard. The defendant was able to wrestle the knife away and locked himself in the bedroom. He told the victim that he was calling the police and that he had a gun, although he did not. After he heard the victim leave, the defendant called 911. The defendant then noticed the victim's hat and sweatshirt on the bedroom floor and moved them and the tank top, which had been ripped when they were wrestling, into the living room.

■ During cross-examination of the defendant, the prosecutor repeatedly asked whether police officers and the defendant's wife, who all offered testimony contradicting the defendant, had "lied" to the jury. In *State v. Lopez*, 156 N.H. 416 (2007), we adopted a broad prohibition against

questions requiring a witness to comment on the credibility of other witnesses. *Lopez*, 156 N.H. at 424. We concluded that asking a defendant whether other witnesses had lied to the jury is improper, because it "interferes with the jury's obligation to determine the credibility of witnesses, and is not probative in that it requires a witness to testify to things outside of her or his knowledge." *Id.* at 423. In addition, such questions "distort the government's burden of proof, create a 'no win' situation for the witness, and are argumentative." *Liggett v. People*, 135 P.3d 725, 729 (Colo. 2006).

██ ██ Here, the prosecutor asked the defendant on fifteen occasions whether police officers, and even his wife, had "lied" to the jury. As the State concedes, this questioning was highly improper. Indeed, "the use of this tactic — asking the defendant whether another witness is lying — is incompatible with the duties of a prosecutor." *State v. Graves*, 668 N.W.2d 860, 873 (Iowa 2003). "Unfairly questioning the defendant simply to make the defendant look bad in front of the jury regardless of the answer given is not consistent with the prosecutor's primary obligation to seek justice, not simply a conviction." *Id.*

██ Moreover, "it is inconceivable that any prosecutor would be unaware of the impropriety of such conduct." *People v. Montgomery*, 481 N.Y.S.2d 532, 532 (App. Div. 1984). Accordingly, today we use this opportunity "to condemn, as forcefully as possible, prosecutorial cross-examination that compels a defendant to state that the police or other witnesses lied in their testimony." *Id.* We note that counsel will continue to have considerable latitude in cross-examining witnesses in a manner designed to highlight testimonial inconsistencies and to focus the jury on the witness's credibility. *Cf. State v. Glidden*, 122 N.H. 41, 47-48 (1982) (finding no error in cross-examination of defendant as to whether he "disputed" testimony of various prosecution witnesses because such questioning did not require the defendant "to comment directly on the veracity, as opposed to the correctness, of another witness's testimony," "brought the defendant's credibility into sharp focus," and allowed the jury "to evaluate the demeanor and the consistency of [the defendant's] answers").

We now examine whether the error calls for reversal. The defendant did not object to the questions regarding the police officers' testimony. When he was asked whether his wife "lied" when she testified that he was a convicted felon, however, the defendant did object. The trial court overruled his objection and directed the defendant to respond to the question. The trial court's ruling is particularly troubling. The prosecutor had already posed numerous questions about whether the police officers had lied in their testimony, although the defendant did not object to these questions.

When the defendant finally did object, the trial court overruled his objection and directed him to answer the question. At that point, the judge should have recognized the improper nature of the prosecutor's questions based upon *Lopez* and sustained the objection. We direct trial court judges to do so in the future.

■ Whether reversal is warranted turns on the question of whether the error was harmless. "To establish that an error was harmless, the State must prove beyond a reasonable doubt that the error did not affect the verdict." *State v. Peters*, 162 N.H. 30, 36 (2011). "An error may be harmless beyond a reasonable doubt if the alternative evidence of the defendant's guilt is of an overwhelming nature, quantity, or weight, and if the evidence that was improperly admitted or excluded is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt." *Id.*

Here, the evidence of the defendant's guilt was overwhelming. At the outset, the defendant destroyed his credibility through his own testimony. He declared that Thavone Souksamrane was not his real name, even though it appeared on his mailbox and was the name that he gave the police from his initial encounter until he took the stand. He denied having given the police his social security number, although an officer testified that he ran the criminal record check based upon the name, date of birth, and social security number given to him by the defendant. Although the defendant had told the police that there was a gun in the house but it was not his, he testified that he did not know about the gun. The key on the defendant's key ring opened the lock on the gun box, which contained a handgun matching the description given by the victim. The defendant testified that he moved the victim's clothes out of the bedroom so that the police would find them, yet he did not give the police consent to search the apartment when asked. Additionally, he offered no explanation for how he escaped without any injury from the victim's attack first with a sword and then with a knife. In sum, we reject, as did the jury, the defendant's contention that his "account of what transpired between him and [the victim] was plausible."

We also conclude that asking the defendant whether his wife lied when she testified that she was aware that the defendant was a convicted felon was merely cumulative. The defendant's credibility was seriously undermined by his assertion that he was not Thavone Souksamrane and, therefore, not a convicted felon. At trial, the State introduced a certified record that the defendant had been convicted of assault by a prisoner in Merrimack County Superior Court. In addition, two police officers testified that they entered data into a computer using information given to them by the defendant and received confirmation that he was a convicted felon.

Accordingly, we conclude that the error in admitting the improper cross-examination of the defendant was harmless.

We turn next to the improper questioning regarding the police officers' testimony. The defendant did not object when he was asked whether the police officers lied in their testimony. Accordingly, we must determine whether this questioning resulted in plain error. *See* SUP. CT. R. 16-A.

■ "To find plain error: (1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings." *State v. Pandelena,* 161 N.H. 326, 329 (2010) (quotation omitted). The State concedes that the first two prongs of the plain error analysis are met. Although the defendant argues that "the facts and circumstances of [his] case satisfy the third and fourth prongs of the plain error rule," we disagree.

■ "Generally, to satisfy the burden of demonstrating that an error affected substantial rights, the defendant must demonstrate that the error was prejudicial, *i.e.,* that it affected the outcome of the proceeding." *State v. Charest,* 164 N.H. 252, 256 (2012). Having determined that the improper questioning regarding the defendant's wife's testimony was harmless based upon the overwhelming evidence of the defendant's guilt, we likewise conclude that the improper questioning regarding the police officers' testimony did not affect substantial rights. *See State v. Ortiz,* 162 N.H. 585, 594 (2011). Accordingly, we affirm.

*Affirmed.*

HICKS, CONBOY, LYNN and BASSETT, JJ., concurred.