NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11992

COMMONWEALTH  vs.  AARON DIRGO.


June 21, 2016.


Practice, Criminal, Argument by prosecutor.


     After a jury trial, the defendant, Aaron Dirgo, was
convicted of aggravated rape and abuse of a child (four counts),
G. L. c. 265, § 23A, and indecent assault and battery on a child
under fourteen years of age (two counts), G. L. c. 265,
§ 13B.  He appealed from the convictions and from the denial of
his motion for a new trial.  He argued, among other things, that
the prosecutor's improper closing argument, to which he did not
object at trial, created a substantial risk of a miscarriage of
justice.  The Appeals Court affirmed.  Commonwealth v. Dirgo, 87
Mass. App. Ct. 1115 (2015).  We granted further appellate review
limited to the issues concerning the closing argument.  Because
we conclude that the cumulative effect of various improper
statements in the prosecutor's argument created a substantial
risk of a miscarriage of justice, we reverse.

     1.  Facts.  The complainant in the case, whom the parties
refer to as H.R., met the defendant when she was twelve years
old.  Her mother and brother were friendly with the defendant
and his son, and their families socialized together.

     The complainant testified that the defendant began to
sexually assault her after she volunteered to babysit for the
defendant's son.  When she babysat in the evenings, she would
sometimes stay overnight at his house.  At first the defendant
touched her under a blanket as they sat on the couch and watched
television.  She described that over time the touching became
more "intimate."  After the complainant turned thirteen years
old, the defendant "progressed . . . [to] sexual intercourse."

She testified that they had sexual relations frequently between 2010 and May, 2011, although she could not identify specific dates. She also testified that, at the time, she developed strong feelings for the defendant and wanted to be in a relationship with him.

Although the complainant told a friend at school about the relationship, she kept it from her mother. She also wrote notes to the defendant about her feelings and their relationship, although she did not deliver them. When her mother discovered one of her notes and confronted her, the complainant denied that she and the defendant had an inappropriate relationship. She described her account in the note as a "dream" of hers. Some months later, a family member saw the complainant smoking a cigarette at the defendant's automobile repair shop and reported this to her mother. Her mother went through her purse and discovered cigarettes, a marijuana pipe, and another note. This time, when she was confronted by her mother, the complainant revealed that she and the defendant did in fact have a sexual relationship. She also repeated those allegations to the police.

When she testified at trial, the complainant was fifteen years of age. She stated that she probably had been in love with the defendant. She maintained that she initially lied to her mother about their relationship in order to protect him. When their relationship was discovered, she continued to be protective toward him. She also acknowledged that she sometimes "escap[ed] [her] reality" by pretending or imagining alternate realities. She further acknowledged that sometimes she was "delusional."

2. _Closing argument_. Although a prosecutor may argue forcefully for a conviction based on the evidence and on inferences that may reasonably be drawn from the evidence, and may respond to the defense's closing argument, she must do so within established parameters. Commonwealth v. Kozec, 399 Mass. 514, 516-517 (1987). In the present case, the defendant claims that the prosecutor's closing argument was improper in three main respects: first, that the prosecutor improperly asked the jury to find the complainant credible because she was willing to testify in court; second, that the prosecutor stated, without evidentiary support, that the complainant's knowledge of age-inappropriate terminology, and hence her ability to give sexually explicit testimony, was attributable to her alleged sexual experiences with the defendant; and third, that the prosecutor improperly suggested that multiple other witnesses

who had not been called to testify were available to corroborate the complainant's version of the events.

    a.  <u>Comments on complainant's credibility</u>.  On appeal, the Commonwealth concedes that the prosecutor improperly argued that the complainant was credible because of her willingness to testify in court.  See <u>Commonwealth</u> v. <u>Beaudry</u>, 445 Mass. 577, 586-588 (2005).  See <u>Commonwealth</u> v. <u>Ramos</u>, 73 Mass. App. Ct. 824, 826 (2009) (recognizing that it was error when prosecutor, "[b]y alluding to conjectured embarrassment experienced by a young woman in coming before a group of strangers to describe a sexual assault, . . . sought to bolster the credibility of the complainant by virtue of her willingness, despite such a burden, to come into court and testify").  As in the <u>Beaudry</u> case, and as is often the case in matters like this, the prosecution depended heavily on the credibility of the complainant's testimony.  <u>Beaudry</u>, <u>supra</u> at 585.  There was no physical evidence or other eyewitness testimony.  <u>Id</u>.  Simply put, the crux of the case was whether the jurors believed the complainant's account of the events.

    The prosecutor's argument in this regard was not a single, offhanded remark.  Rather, the prosecutor established throughout the argument an overarching theme that the complainant was credible because of her willingness to testify.  After marshalling the evidence, the prosecutor said:

> "His Honor is going to give you some instructions about assessing credibility in witnesses.  And when he gives you that instruction, he's going to ask you, what does that witness stand to gain or to lose by testifying the way they do?  What is their motive?  . . .

> "What did [the complainant] gain by coming forward on this case?  What did she gain?  Did she gain anything at all?

> "And think about -- think to yourselves, when she sat on the witness stand yesterday and today and was telling you -- relaying all of the facts of her relationship with the defendant, relaying different sexual acts that they would engage in, do you think that was easy for her to do that?

> "She subjected herself to your scrutiny in telling you -- even still as a teenager, she's not yet [sixteen], she told you about what they did together.  She told you about

all the sexual things that they did together. Did she seem embarrassed at times? Maybe a little uncomfortable in using terms that for the most part were foreign to her before she engaged in all of these things with the defendant. Think about that.

"She subjected herself -- she answered all of [defense counsel's] questions. You had an opportunity to see her. And despite all of the interaction and talk about how delusional and how she made up a lie to cover up the note to protect the defendant, think about what she gained when she sat here yesterday and today and told you about what happened. I would suggest to you that she gained nothing."

The prosecutor also reminded jurors of this theme at the end of her argument:

"I urge you again to consider the whys. Why would she subject herself?"

Where, as here, defense counsel in closing argument challenges the credibility of the complainant, it is proper for the prosecutor to invite the jury to consider whether the complainant had a motive to lie and to identify evidence that demonstrates that the complainant's testimony is reliable. Commonwealth v. Polk, 462 Mass. 23, 40 (2012). The prosecutor could have argued the implausibility of the defendant's theory that the complainant was lying to divert her mother's attention from her cigarette and marijuana use. There was evidentiary support for such argument, unlike the argument that the complainant was credible because of her willingness to testify. The prosecutor's repeated suggestions that the complainant was credible because of her willingness to testify and to subject herself to the scrutiny of the jury were not collateral errors, but went straight to the heart of the case, the believability of her allegations that she was sexually assaulted by the defendant.

b. Complainant's knowledge of sexual terminology. This court has repeatedly cautioned prosecutors to restrict their "closing argument to the evidence and fair inferences that might be drawn therefrom." Commonwealth v. Arroyo, 442 Mass. 135, 146-147 (2004). In Beaudry, 445 Mass. at 579-584, we considered whether a prosecutor could properly argue that a child demonstrated knowledge of sexual acts and terms not typically possessed by a child her age, and ask the jury to infer that such knowledge was attributable to the alleged sexual abuse by

the defendant. Recognizing that such knowledge might be attributable to any number of other sources, especially given the many other possible sources available to children today for acquiring sexual knowledge, see id. at 582-583, we held that it was permissible to argue that a child's knowledge of sexual terminology was the result of a defendant's alleged assaults, but only if there is "an adequate and specific basis in the record . . . that excludes other possible sources of such knowledge" (citation omitted). Id. at 584.

At trial, the jury heard the fifteen year old complainant use terminology that was sexually explicit.[1] In her closing argument, the prosecutor repeatedly suggested that the complainant's knowledge of sexual terminology was attributable to being assaulted by the defendant. She argued that the complainant "us[ed] terms that for the most part were foreign to her before she engaged in all of these things with the defendant"; "told you about things that would make most grown people blush and be embarrassed to talk to strangers about and tell you"; and "never heard [the term ejaculation] before. She didn't know what that was."[2,3] In violation of our directive in Beaudry, id., the prosecutor made these arguments without there being an adequate and specific basis in the record.

The challenged argument is particularly troubling because the prosecutor was (or at least should have been) aware that there was in fact another possible source of the complainant's knowledge of sexual matters. Id. at 583. Before trial, the prosecutor produced a report by the Department of Children and Families that described that the complainant had previously reported that she had been sexually abused by another child.

---

[1] In her testimony, the complainant used the terms and phrases "sexual intercourse," "penetration," "penis," "digital touching," "finger me," "go down on me," "oral sex," and "blow job."

[2] The Commonwealth now concedes that there was no basis for the argument that the complainant had not previously heard the term "ejaculation."

[3] There was a basis in the record for finding that the complainant had sexual experiences with the defendant that she had not had previously, but that is different from finding that her knowledge of sexual matters and her familiarity with graphic sexual terminology originated from those experiences. The prosecutor's argument urged the jury to find the latter.

The report indicates that the complainant said to her mother that another child "[told] her all about sex all the time" and "[made] her have sex with her all the time." Additionally, after trial, in response to the defendant's motion for postconviction discovery, the Commonwealth produced a police report that also concerned these allegations.[4] According to the report, the mother stated that the complainant had "detailed knowledge" of sexual intercourse. Thus, the evidence produced before trial -- and the additional evidence discovered after trial -- suggested that she may have learned these words before the alleged sexual assaults by the defendant. See Commonwealth v. Ruffen, 399 Mass. 811, 815 (1987) ("If the victim had been sexually abused in the past in a manner similar to the abuse in the instant case, such evidence would be . . . relevant on the issue of the victim's knowledge about sexual matters"). These reports further support our conclusion that the prosecutor improperly argued that the child's use of sexual terminology was attributable to the defendant without excluding other possible sources of knowledge.

c. References to other available witnesses. Lastly, the defendant asserts that the prosecutor improperly commented on the constraints of the first complaint doctrine, by suggesting that the Commonwealth had other available witnesses that it was prevented from calling to testify. In closing argument, the prosecutor tried to explain to the jury why she did not present these additional witnesses:

> "The Commonwealth has one shot, the one witness that we can call and that's it. That's it. So it shouldn't be any surprise when you hear that instruction again why the Commonwealth did not parade witness after witness in here to tell you the same thing. We can't. We can't."

The Commonwealth contends that this argument was a fair response to the judge's instructions[5] and the defense's closing

---

[4] In a joint motion to expand the appellate record, the parties stated that the police report was responsive to the defendant's pretrial discovery motion, but was not produced by the Commonwealth until after trial. The defendant should have received the police report before trial. We do not imply that by furnishing the police report when she did that the prosecutor had it before trial.

[5] Before the first complaint witness testified, the judge instructed the jury by using a modified version of the model

argument[6] to the extent that they implied that the complainant reported the alleged sexual abuse to more than one person, but the Commonwealth presented only one witness.

The prosecutor could have objected to the defendant's argument on grounds that it unfairly took advantage of the limitation on the prosecutor's ability to present this type of evidence, and still have been in conformance with the law of first complaint. Although it is permissible for a prosecutor to object to errors in the jury instructions and to rebut, fairly and forcefully, a defense counsel's argument, the prosecutor's argument here strained the limits of what is permissible. See Kozec, 399 Mass. at 519 (recognizing that where defense counsel's argument justifies rebuttal from prosecutor, "the prosecutor, as a representative of the government, must hold himself to a consistently high and proper standard"). The prosecutor pressed the parameters of permissibility by implying that, were it not for the evidentiary limits of the first complaint doctrine, she would have been able to "parade witness after witness" into court to tell the jury "the same thing," essentially that the complainant had given the same account to many others. This kind of argument implies that the prosecutor possessed additional witnesses corroborating the complainant's testimony beyond what was legitimately in evidence, a classic concern of the first complaint doctrine. See Commonwealth v. Misquina, 82 Mass. App. Ct. 204, 206 (2012).

3. Substantial risk of a miscarriage of justice. In this case, where the defendant failed to object to the prosecutor's argument, our review is limited to whether there was a

---

jury instructions set forth in Commonwealth v. King, 445 Mass. 217, 247-248 (2005), cert. denied, 546 U.S. 1216 (2006). By identifying the complainant as H.R., instead of speaking about the complainant in general terms, the judge may have implied that she, in fact, "may have reported the alleged sexual assault to more than one person."

[6] In his closing argument, the defense counsel stated:

"We're dealing with a sexual assault. Would it have been nice for the district attorney to at least put one of the Chicopee Police Department detectives, an experienced sexual assault investigator on the stand to tell you what their investigation led to? Didn't hear from one police witness."

substantial risk of a miscarriage of justice.  The substantial risk standard requires us to determine "if we have a serious doubt whether the result of the trial might have been different had the error not been made."  Commonwealth v. Azar, 435 Mass. 675, 687 (2002), S.C., 444 Mass. 72 (2005), quoting Commonwealth v. LeFave, 430 Mass. 169, 174 (1999).  This standard requires that we review the evidence and the case as a whole.  Azar, supra.  "We consider the strength of the Commonwealth's case, the nature of the error, the significance of the error in the context of the trial, and the possibility that the absence of an objection was the result of a reasonable tactical decision." Id., and cases cited.  See Kozec, 399 Mass. at 517-519 (articulating questions that appellate court asks, on case-by-case basis, to determine whether improper prosecutorial argument constitutes reversible error).  If, after such a review, we are left with uncertainty that the defendant's guilt has been fairly adjudicated, we will order a new trial.  Azar, supra.

Here, the prosecutor's improper remarks -- arguing that the complainant was credible because she was willing to testify at trial; attributing her knowledge of sexual terminology to the alleged assaults, without an adequate and a specific basis in the record that excluded other possible sources of such knowledge; and implying that there were more witnesses that were not brought before the jury that would have corroborated the first complaint testimony -- went directly to the jury's assessment of the complainant's testimony and credibility, which was the core of the Commonwealth's case.  Beaudry, 445 Mass. at 585.

This is not a situation where erroneous closing statements were offset by overwhelming evidence of a defendant's guilt. The Commonwealth's case depended heavily on the complainant's testimony, and hence her credibility.  Some of the complainant's testimony might have seemed implausible, including that nearly all of the time that the defendant sexually assaulted her on the couch in the living room, his girlfriend was present, either sleeping in the living room on another couch or in the defendant's bedroom.  There were no other eyewitnesses.  The Commonwealth offered only limited additional testimony from the complainant's mother regarding the complainant's relationship with the defendant, and from the complainant's friend, who was the first complaint witness.  There was no physical evidence.

Finally, this is not a case where strong curative instructions offset the impact of improper argument.  With respect to witness credibility and closing arguments, the judge

merely gave the general instructions.  These instructions did not specifically address, and were not enough to cure the cumulative effect of, the particular errors we have identified.

Because we are left with a serious doubt whether the result of the trial might have been different had the prosecutor's errors in closing argument not been made, we conclude that there was a substantial risk of a miscarriage of justice.  Based on our review of the entire case, we cannot be certain that the defendant's guilt was fairly adjudicated.  In these circumstances, a new trial is necessary.

4. <u>Conclusion</u>.  The judgments are reversed, the verdicts set aside, and the case is remanded to the Superior Court for a new trial.

<u>So ordered</u>.


<u>Merritt Schnipper</u> for the defendant.
<u>Katherine E. McMahon</u>, Assistant District Attorney (<u>Eileen M. Sears</u>, Assistant District Attorney, with her) for the Commonwealth.