NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Grafton
No. 2017-0030

THE STATE OF NEW HAMPSHIRE

v.

KEVIN DROWN

Argued: December 6, 2017
Opinion Issued: June 5, 2018

Gordon J. MacDonald, attorney general (Sean R. Locke, assistant attorney general, on the brief and orally), for the State.

Thomas Barnard, senior assistant appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. Following a jury trial, the defendant, Kevin Drown, was convicted on three counts of aggravated felonious sexual assault, see RSA 632-A:2 (1988), and one count of felonious sexual assault, see RSA 632-A:3 (1988). On appeal, he argues that the Trial Court (Bornstein, J.) erred by permitting the prosecutor to: (1) argue that it was difficult for the victim to testify, and because she did so, she must be credible; (2) ask the defendant for his opinion about the victim's credibility; and (3) argue that the defendant's opinions about the victim's credibility were inculpatory and contradicted his counsel's argument. He requests that, to the extent that we conclude that his arguments

have not been preserved for appellate review, we consider them under our plain error rule.  See Sup. Ct. R. 16-A.  We affirm.

The jury heard the following evidence.  The defendant was charged with sexually assaulting the victim on multiple occasions between August 1988 and August 1990 when she was under the age of thirteen.  At the time of the alleged assaults, the defendant's family and the victim's family lived in the same apartment building.

Detective Fiske testified that she contacted the victim in 2014 after learning information that led her to suspect that the victim might have been sexually assaulted by the defendant.  When asked, the victim confirmed Fiske's suspicion.  Fiske asked her whether she would be willing to be interviewed.  Although she did not initially agree to an interview, the victim eventually did when Fiske telephoned again a week later.  Following Fiske's testimony, the trial judge instructed the jury that her testimony could be considered "only for the purpose of providing background of the investigation.  You may consider the fact that the conversation occurred, but the content of that conversation should not be considered by you for the truth of the words spoken during the conversation."

The victim was the next witness.  She testified that, when she was seven years old, the defendant engaged in an escalating series of sexual assaults against her over the course of several visits to his apartment, culminating with him inserting the handle of a hairbrush into her vagina on two separate occasions.  Each assault occurred when they were alone inside one of the apartment's bedrooms.  The victim notified her mother of the assaults at one point, but her mother took no action and told her not to tell anyone.

A few months after the defendant assaulted her for the final time, the victim and her family moved to a new residence.  When she was a teenager, the victim told her sister that she had been sexually assaulted.  Several years later, she also disclosed to her future spouse that she had been sexually assaulted by the defendant.  The victim's sister and husband also testified at trial.  They each confirmed that the victim had disclosed to them years earlier that she had been sexually assaulted.

After the State rested, the defendant took the stand and denied that he had sexually assaulted the victim.  He explained that he had asked to meet with Lieutenant Mitchell, one of the investigating officers, "[b]ecause I heard these allegations through members of my family."  Mitchell conducted two interviews with the defendant approximately one month apart; both interviews were recorded.  The State played redacted video recordings of the interviews at trial and provided the jury with the associated transcript.  During both interviews, the defendant denied sexually assaulting the victim and asserted that he did not know why she would make these allegations against him.

The jury found the defendant guilty on all four sexual assault charges. This appeal followed.

The defendant first argues that several statements made by the prosecutor during her closing argument were not supported by the record. He identifies the following statements: (1) that the victim "didn't want to come into this courtroom and tell strangers about" the assaults; (2) that it was "really, really, hard [for the victim] to come and tell 14 strangers about what [the defendant] did to her"; (3) that the victim knew prior to trial that "it was going to be really, really hard"; (4) that the victim was "embarrass[ed]" about testifying and that she "didn't want to say it"; and (5) that, as a result of the trial, the victim's husband and her sister learned the details of the assaults.

Having reviewed the record of the State's closing argument, we have found no objection made by defense counsel that can be construed to alert the trial court that the cited statements were allegedly not supported by the record. See, e.g., State v. Whittaker, 158 N.H. 762, 767 (2009) (concluding that alternative arguments supporting claim of error are not preserved if not first raised in trial court). Accordingly, we consider this argument under our plain error rule. See, e.g., State v. Pinault, 168 N.H. 28, 33 (2015) (failure to raise claim of error in timely fashion does not preclude all appellate review, but rather confines review to plain error).

The plain error rule allows us to exercise our discretion to correct errors not raised before the trial court. State v. Euliano, 161 N.H. 601, 605 (2011); see Sup. Ct. R. 16-A. The rule, however, should be used sparingly, its use limited to those circumstances in which a miscarriage of justice would otherwise result. State v. Guay, 164 N.H. 696, 704 (2013). For us to find plain error: (1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings. State v. Pennock, 168 N.H. 294, 310 (2015). For the following reasons, we conclude that the defendant has failed to establish that the challenged statements constituted error.

A prosecutor may draw reasonable inferences from the evidence presented and has great latitude in closing argument to both summarize and discuss the evidence and to urge the jury to draw inferences of guilt from the evidence. State v. Cable, 168 N.H. 673, 688 (2016). The victim testified that, although she had told her husband and sister about the assaults years earlier, she had not disclosed the details. She also testified that, until she was contacted by Fiske, she had not disclosed the details to anyone and had not intended to report them to the police: "I was trying to be happy and I just put it away." She testified that she felt sick when first contacted by Fiske, and that she was crying and emotional during her subsequent interview. At one point during the victim's testimony, the prosecutor asked permission from the court

to approach and told the victim: "There's tissues up there if you need a break or some tissues."

Based upon the evidence in the record, we conclude that the prosecutor's remarks were not improper. Rather, the prosecutor was drawing inferences from the evidence presented and the demeanor of the victim during trial, which would have been readily apparent to the jury. See id. Accordingly, the defendant has failed to establish that the cited statements were not supported by the evidence.

The defendant also argues that the prosecutor's argument was improper because, according to the defendant, the prosecutor argued that the victim was credible "because she chose to testify despite the difficulty and embarrassment of doing so." The State contends that the defendant did not make this specific argument before the trial court and has, therefore, failed to preserve it.

During her closing, the prosecutor argued: "Why would [the victim] come here and tell you that if it wasn't true?" The defendant objected:

> I'm going to object to the argument that she must be telling the truth otherwise why would she have made the decision to testify and prosecute this case? I think that that is an inappropriate argument to make to say that she must be truthful because she's made the decision to do these things and I rely on the case of Commonwealth versus [Dirgo]. It's a Massachusetts case. It was decided in June of this year.

See Commonwealth v. Dirgo, 52 N.E.3d 160 (Mass. 2016). When the trial court asked for clarification, defense counsel stated: "[T]he prosecutor repeatedly argued that the alleged victim must be telling the truth because she would not have otherwise chosen to prosecute, testify, and be cross-examined. [The Dirgo Court] found that such statements were inappropriate." The trial court overruled the objection, stating:

> At least, the way it's worded, I'm going to overrule the objection. It's posed in the form of a question. It's not an affirmative -- a statement of opinion by the prosecutor as to the credibility of the witness or that she said telling the truth. It's not an expression of a personal opinion. It's posed as the form of a rhetorical question for the jury to draw their own inferences; saying that it does -- I mean, ultimately, it's the alleged victim's credibility is the center point of this case.
>
> The Defense is arguing that she's not credible and that's a lie. The State can carefully, albeit, but at least so far it isn't -- the State can address that contention and ask the jury to conclude

4

and make rational inferences about whether the alleged victim's testimony is truthful based on the evidence presented and the circumstances presented overall. So the -- at least the objection to this one statement is overruled.

Although the defendant provides additional support on appeal for his argument, the basis for his challenge remains the same; that is, arguing that a victim in a sexual assault case is credible because she chooses to testify "despite the difficulty and embarrassment of doing so" constitutes impermissible vouching for her credibility. The analysis articulated by the trial court demonstrates that it understood and addressed the defendant's objection to the challenged statement. See State v. Gross-Santos, 169 N.H. 593, 598 (2017). We conclude, therefore, that the defendant's argument is preserved and turn to its merits.

Citing State v. Mussey, 153 N.H. 272, 277-78 (2006), the defendant contends that an argument that asks the jury to find a victim credible because she found it embarrassing to testify "vouches for [her] credibility" and "distracts the jury from its primary responsibility of weighing the evidence before it." He asserts that this argument "elevated the credibility of sexual assault complainants, as a group, over the credibility of other witnesses, including defendants" and that it "encouraged the jury to act based on considerations other than the particularized facts of the case." (Emphasis omitted.) We are not persuaded by this characterization of the challenged statement.

We begin by summarizing the defendant's closing argument, which included assertions that: (1) "the whole thing is a lie"; (2) the victim didn't provide details of the assaults to her husband and her sister because she "knew it wasn't true"; and (3) referring to the victim's disclosures to her sister and husband, "it was all a lie from the start." Defense counsel made several additional references to the victim's lack of truthfulness, explaining to the jury that it was not the defendant's burden to "explain to you why [the victim] is being untruthful." She also argued:

Sexual assault of a young child is a horrible crime. No one in this room would disagree with that, but what's worse than the sexual assault of a child is lying about it because lying about it undermines the credibility of the true victims and also of course, because it is devastating to the accused.

In response, the State asked the jury to consider why the victim would lie, and, citing the details of the assaults committed with a hairbrush, stated: "And I know you guys don't want to hear that again; nobody wants to hear that. [The victim] didn't want to say it. Why? Why would she come here and tell you that if it wasn't true."

5

We have previously "found no impropriety in an argument that a witness had nothing to gain by testifying falsely where defense counsel had attacked the witness's credibility." State v. Mussey, 153 N.H. 272, 279 (2006). The challenged statement in this case is distinguishable from the prosecutor's argument in Mussey which, despite no supporting evidence, "effectively told the jury that if it returned a verdict of not guilty, the police officers [who testified at trial] would suffer detrimental consequences to their careers." Id. at 278. In contrast, here, the prosecutor's question was a permissible response to defense counsel's closing argument. See State v. Ainsworth, 151 N.H. 691, 698 (2005). As the United States Supreme Court has cautioned: "[P]rosecutorial comment must be examined in context." United States v. Robinson, 485 U.S. 25, 33 (1988). "To this end it is important that both the defendant and the prosecutor have the opportunity to meet fairly the evidence and arguments of one another." Id.; see also United States v. Rodriguez, 215 F.3d 110, 123 (1st Cir. 2000) ("an argument that does no more than assert reasons why a witness ought to be accepted as truthful by the jury is not improper witness vouching").

For the same reason, we find the defendant's reliance upon Commonwealth v. Dirgo, 52 N.E.3d at 160, unpersuasive. In Dirgo, the Massachusetts Supreme Judicial Court granted a defendant's motion for a new trial after concluding that "the cumulative effect of various improper statements in the prosecutor's [closing] argument created a substantial risk of a miscarriage of justice." Dirgo, 52 N.E.3d at 162. These statements included the "prosecutor's repeated suggestions that the complainant was credible because of her willingness to testify and to subject herself to the scrutiny of the jury," which the Commonwealth conceded was improper under Massachusetts jurisprudence. Id. at 163-64. "The prosecutor's argument in this regard was not a single, offhanded remark. Rather, the prosecutor established throughout the argument an overarching theme that the complainant was credible because of her willingness to testify." Id. at 163.

In contrast to Massachusetts case law, as the defendant concedes, we have never held that it is improper for a prosecutor to argue that a sexual assault victim is credible simply because she chose to testify. Nor do the facts of this case support the establishment of such a prohibition. The prosecutor's rhetorical question did not rely upon facts not in evidence, but rather asked the jury to consider the obvious difficulty that the victim exhibited during her testimony when describing the assaults. Given defense counsel's emphasis upon the victim's credibility in her closing argument, we conclude that the trial court did not err in overruling defense counsel's objection.

The defendant next argues that the trial court erred "by permitting the prosecutor to require [him] to comment on the [victim's] credibility." Transcripts of the defendant's two pretrial interviews with the police had already been admitted into evidence when he took the stand. During the first interview, when asked why the victim would accuse him of the assaults, the

defendant responded that he did not know and at one point surmised that "she is transferring it from somebody else." During the second interview, he reiterated that he wasn't denying that the victim had been sexually assaulted but was "just saying it wasn't [him]."

At trial, when asked about the interviews, the defendant acknowledged being asked "several times why [the victim] would make this up now, 25 years after it happened." The following exchange then took place:

[Prosecutor] Do you remember what your answer was?

[Defendant] I have no idea why.

[Prosecutor] And they asked you that several times, right?

[Defendant] Absolutely.

[Prosecutor] And your answer every time was I have no idea why?

[Defendant] Yes.

[Prosecutor] They also asked you a question and you responded about whether or not you thought [the victim] was lying.

[Defendant] Yes.

[Prosecutor] And what did you say?

[Defendant] I said I have no way of knowing if she's lying or not about that having been done to her. I can only attest that I did not do anything to her.

[Prosecutor] So your testimony here today is that you said to Lieutenant Mitchell, I have no way of telling if she's lying or not?

[Defendant] Correct.

[Prosecutor] Your Honor, may I approach the witness?

THE COURT: You may.

. . . .

[Prosecutor] Mr. Drown, please read line 147 and 148.

7

[Defendant] "I'm not – I'm not denying that with [the victim] at all that she's making it up. I'm just saying it wasn't me. I didn't never -- I mean never, ah, never."

[Prosecutor] So in that interview you said I'm not denying that with [the victim] at all, I'm not saying she made it up, right?

[Defendant] Correct.

[Prosecutor] Okay. Do you think [the victim]'s lying now?

[Defendant] If she's saying that I did something, she's absolutely wrong, yes.

[Prosecutor] Well, you saw her testimony. That's what she said. Is she lying?

[Defendant] She is lying.

[Prosecutor] So that passage you just read for us, an interview, you said you're not denying that [the victim]'s telling the truth. You said you didn't think she was lying and now you're saying --

[Defendant] As far as being molested, I have no idea if she was molested or not, but I did not do anything to her.

[Prosecutor] So you think that maybe [the victim]'s mistaken about the person who did these things to her?

[Defendant] I have no idea, but that's always a possibility. I don't know.

The prosecutor followed with several additional questions asking the defendant whether the victim was "mistaken" about who had committed the sexual assaults against her.

The defendant concedes that "it was permissible for the prosecutor to ask him about his statements during the interrogation." As we have explained, "a recorded interview does not implicate the same concerns that underlie our prohibition against witness testimony at trial that opines upon the credibility of other witnesses." State v. Willis, 165 N.H. 206, 218-19 (2013). He further concedes that because "a defendant's statement about whether he is aware of any motive for the complainant to lie is relevant and carries minimal risk of undue prejudice," see id. at 220, the prosecutor properly explored his answers to police questioning concerning any motive the victim may have had to accuse him of the assaults.

8

The defendant argues, however, that the prosecutor moved into impermissible territory when she asked him first, whether he believed that the victim was lying in her testimony, and second, whether he believed that the victim was mistaken in her testimony when she identified him as the perpetrator of the assaults. Because he did not object to either line of questioning at trial, he asks that we review this argument under our plain error rule. See Sup. Ct. R. 16-A.

The defendant's challenge encompasses two categories of questions: the first asks that we find plain error when a prosecutor asks a witness whether another witness might be mistaken in testimony; the second asks that we find plain error when a prosecutor asks a witness whether another witness is lying. The defendant does not cite a case, nor have we found one, in which this court has found impropriety in asking a witness at trial whether another witness was "mistaken" in testimony. Even if we assume that this might be objectionable, this issue is not a matter of settled law. Cf. State v. Glidden, 122 N.H. 41, 47-48 (1982) (trial court properly allowed State to cross-examine defendant, over his counsel's objection, regarding whether he "disputed" testimony of various prosecution witnesses because such questioning did not require the defendant to comment directly on the veracity, as opposed to the correctness, of another witness's testimony), cited with approval in State v. Souksamrane, 164 N.H. 425, 428 (2012). Accordingly, we decline to find error. See State v. Rawnsley, 167 N.H. 8, 12 (2014) (generally, when law is not clear at time of trial, and remains unsettled at time of appeal, decision by trial court cannot be plain error).

The prosecutor's questions to the defendant asking whether the victim had lied in her trial testimony fall into a separate category. In State v. Lopez, 156 N.H. 416, 423-24 (2007), we acknowledged a trend in our cases "toward limiting testimony or questioning that requires a witness to opine upon the credibility of other witnesses." Lopez, 156 N.H. at 424. Such questioning is objectionable because it "interferes with the jury's obligation to determine the credibility of witnesses, and is not probative in that it requires a witness to testify to things outside of her or his knowledge." Id. at 423. We then endorsed "a broad prohibition on questions requiring a witness to comment upon the credibility of other witnesses." Id.; accord Guay, 164 N.H. at 704; Souksamrane, 164 N.H. at 427-28; State v. Parker, 160 N.H. 203, 212-14 (2010). The defendant maintains, therefore, that "permitting the prosecutor to ask these questions was error" and that the error was plain because we have "repeatedly held that questions such as those posed here are improper."

However, when the alleged "plain error" results from a line of questioning at trial, the existence of plain error "does not depend solely on whether — as an abstract matter — the lawyer's questions or the elicited answers would have been inadmissible if . . . objected to. Rather, any 'plain error' must relate to the trial court having not taken affirmative steps to intervene in the parties'

litigation." State v. Corkill, 325 P.3d 796, 801 (Or. Ct. App. 2014); see State v. Rawnsley, 167 N.H. at 12 ("[B]ecause the defendant never objected to the challenged testimony, and the trial court never ruled it admissible, we agree with the defendant that '[t]he pertinent question is whether the trial court erred in failing sua sponte to strike' that testimony."); see also United States v. Young, 470 U.S. 1, 14 (1985) (concluding that prosecutor's statements, although inappropriate and amounting to error, were not "plain error" warranting the court to overlook the absence of any objection by the defense); United States v. Williams, 527 F.3d 1235, 1247 (11th Cir. 2008) (for admission of evidence to constitute plain error, evidence must have been so obviously inadmissible and prejudicial that, despite defense counsel's failure to object, trial court, sua sponte, should have excluded it).

The trial court did not, as the defendant contends, "permit" the prosecutor to ask the challenged questions, nor, for that matter, did the court "admit" his responsive testimony; rather, due to the absence of an objection, it took no action. It is this inaction, and neither the impropriety of the questions asked nor the testimony elicited, that provides the basis for our review. That is, the pertinent inquiry with regard to whether a "plain error" occurred in this case is not whether the prosecutor's cross-examination was objectionable, which under our current case law is undisputable, but rather whether the trial court should have sua sponte intervened to strike the questioning at issue and/or exclude the resulting testimony.

Although we accepted the State's concession of error in Lopez, Lopez, 156 N.H. at 423, our holding that it is objectionable to ask a witness to opine upon whether another is lying did not equate with the imposition of a duty on trial courts to intervene sua sponte with regard to such questioning. Cf. Souksamrane, 164 N.H. at 429 (directing trial court judges to sustain objections to such questions). Indeed, "[w]e have never held that a trial court must sua sponte strike or issue a curative instruction with respect to witness testimony." State v. Noucas, 165 N.H. 146, 161 (2013); accord State v. Thomas, 168 N.H. 589, 604 (2016). Rather, we have suggested that courts should refrain from taking such action. See State v. King, 146 N.H. 717, 722 (2001) (holding that trial court erred "when it sua sponte asserted the privilege against self-incrimination on the witness's behalf"); cf. State v. Washington, 693 N.W.2d 195, 205 (Minn. 2005) ("We do not agree that [a] [trial] court must, or even should, interfere with the trial strategy of the defendant. To act sua sponte here would risk highlighting or enforcing rights that the defendant had, for tactical reasons, decided to waive."); United States v. Hickman, 592 F.2d 931 (6th Cir. 1979) (concluding trial court plainly erred, in part, by interjecting itself more than 250 times in one-day trial and, rather than waiting for objections to be made, by "sua sponte interrupt[ing] a witness or counsel, with the words 'objection sustained' and then proceed[ing] to state why the witness' particular testimony was in some way objectionable").

10

What is often overlooked in the rote application of the plain error standard is that, without objection, it is almost impossible to conclude that the [trial] court committed error at all. It is one thing to say that evidence, if objected to, should have been excluded; it is quite another to say that admission of evidence over no objection is error in some abstract sense. The error in the former circumstance is the [trial] court's failure to sustain the defendant's objection; in the latter, the error is evidently the improper infringement upon a defendant's unwaivable right to be tried only by admissible evidence. The problem with the second formulation is that defense counsel can waive evidentiary restrictions, and often has legitimate strategic reasons for doing so.

United States v. Smith, 459 F.3d 1276, 1299-1300 (11th Cir. 2006) (Tjoflat, J., specially concurring).

In this case, the defendant had already denied in two pretrial interviews that he committed the charged assaults, and transcripts of those interviews had been admitted into evidence. After the victim described the assaults to the jury, the defendant took the stand to again deny that he was the perpetrator. If he appeared to be a credible witness, it might well have been defense counsel's strategy, or the defendant's decision, to allow him to deny each allegation as forcefully as possible before the jury.

The prosecutor's line of questioning could also be interpreted as an attempt to suggest that the defendant's failure to deny that the victim might have been assaulted by someone else when speaking with the police might somehow be viewed as an admission by the defendant that he had committed the assaults. This attempted obfuscation by the prosecutor was so obviously wrong that defense counsel could well have concluded that there was no need to object because the jury would perceive the absurdity of what the prosecutor was suggesting and determine that it reflected badly on the strength of the State's case.

We conclude that the trial court did not err in failing to sua sponte strike the questioning at issue, or to exclude the resulting testimony. See Rawnsley, 167 N.H. at 13. In so concluding, we do not condone prosecutorial actions that contravene our existing case law. We have frequently emphasized that the duty of a public prosecutor is to seek justice, not merely to convict. See, e.g., State v. Preston, 121 N.H. 147, 151 (1981); see also ABA Standards for Criminal Justice: Prosecution and Defense Function, Standard 3-1.2 (3d ed. 1993). And we have cautioned that failure to adhere to standards set forth in our case law may result not only in reversal of convictions but also in disciplinary proceedings against the offending prosecutor. Preston, 121 N.H. at 151.

The defendant's final argument addresses remarks made by the prosecutor during closing argument. He contends that the trial court erred by permitting the prosecutor to argue that the defendant's opinions about the victim's credibility "were inculpatory and contradicted his attorney's arguments." The defendant maintains that it was improper for the prosecutor to argue that the defendant was not credible "because he expressed inconsistent opinions about whether [the victim] was lying or mistaken" and "because his opinions about whether the [victim] was lying or mistaken differed from the theory of [the] case presented by his attorney in opening statement and closing argument." He concedes that he did not object on these grounds and asks that we find that the trial court's failure to intervene constituted plain error. In support, he cites the following excerpt from the State's closing argument:

> Now the defense attorney and her client, the Defendant, seem to disagree about what actually happened here. The defense attorney told you [the victim]'s a liar. Everything she told you yesterday was a lie, but Kevin Drown didn't say that. Even this morning when I asked him, well, is she a liar now, Kevin? You heard her testimony yesterday. He said, well, she's lying about me doing it to her, but he never said it didn't happen. And the defense attorney said to you, well, that's because maybe he feels some sympathy for [the victim] and he doesn't want to call her an outright liar. Maybe that's the case or maybe he knows what happened and maybe he knows it's not a lie.

We conclude that the trial court did not err in failing to sua sponte interrupt the State's closing argument. We have frequently observed that the trial court has the advantage of observing the witnesses and jury firsthand; in contrast, on appeal, we examine the record without benefit of these firsthand courtroom observations. See, e.g., State v. Durgin, 165 N.H. 725, 734 (2013). In this case, the factual statements were not inaccurate, and the State asked the jury to draw conclusions from them. It is possible that defense counsel did not object because she concluded that this part of the prosecutor's argument was nonsensical and would be seen as such by the jury, and thus undermine the force of the message that the prosecutor was attempting to convey.

Affirmed.

LYNN, C.J., and BASSETT and HANTZ MARCONI, JJ., concurred; DALIANIS, C.J., retired, specially assigned under RSA 490:3, concurred.